Good morning, my name is Vanessa Schwabsky and I represent the Defendant Appellant Indigo Ag Inc. in this appeal of the District Court's partial denial of Indigo's motion to compel arbitration and motion to dismiss. In this case, there are not one, but two valid and enforceable arbitration clauses that require JES Farms to arbitrate all of its claims with Indigo and prevent Jess Farms from trying to extract a single issue of contract legality from a two-year long arbitration. This should be an easy case. There is case law directly on point as decided by the Supreme Court and this Court. When you have a broad arbitration clause and the challenge is to the contract as a whole, the arbitrator must decide the issue of contract validity and only issues of the arbitration clause validity can be decided by the Court. Here we have the first of the two arbitration clauses can be found in the Marketplace Seller Agreement, which is effectively a master agreement that governs and is incorporated into all of the other contracts and agreements between JES Farms and Indigo. It has already been determined, and it is not dispute on this appeal, that that arbitration clause is valid and enforceable. JES Farms' challenge is to the legality of a contract as a whole, not the legality of the arbitration clause. Thus, under Buckeye, M.A. Mortensen, and the other case progeny, the question of legality of the contract as a whole is one for the arbitrators, not the Court. Now in the District Court, it erroneously found that the Marketplace Seller Agreement clause is a narrow one in order to avoid the application of Buckeye and related cases. But when you look at the actual language in the arbitration clause, it is evident that it is a broad clause. The Marketplace Seller Agreement arbitration clause provides that except as otherwise provided herein, the agreement, any addendum, and any transaction are subject to NGFA rules, and any dispute will be referred to NGFA arbitration. Now, any dispute, it's harder to get any broader than that. Yeah, but then there's a clause or a sentence right after that that talks about relating disagreements or disputes relating to crop transactions. How do those two sentences interact with each other in your view? So the second sentence isn't an exception. And that's evident because if you read that as an exception, it would swallow the whole. That doesn't make sense, right? An exception is going to be a carve-out, not something that just overrides the entire clause. And also, it provides additional clarity. It's very common in contracts to take a, you know, a belt and suspenders type approach. And it also provides clarity that should there be any instances that aren't covered under the agreement or a specifically transacted crop transaction, that it still applies. Could it be, though, that it says any dispute in that first sentence, and then the next sentence defines what disputes fall into that first sentence? That would be an odd way to construct a sentence. I agree. I'm just trying to, I mean, it's also odd to have one that's really broad covered by one that's much more narrow. I mean, it's just a broad arbitration agreement to begin with. Yeah, I agree. And I just don't think you can read it that way because they put the first portion and then say, and any disputes, right? Then you're supposed to read those two things together, not separately. But we did, back to your question, could there be anything else? Is it redundant? It's not because we provide an example, which sometimes happens in the commodity business where there's an overfill when something's delivered. And that might not specifically fall. There could be a dispute about that. So this clarifies that something like that, if there is a crop transaction that for some reason doesn't fall under the already very broad clause, we still are going to be arbitrating that dispute. Counsel, does the fact that JES initiated arbitration in 2021 with respect to money owing, is that significant at all with respect to the issue you're talking about? I think it is. I think it demonstrates that both parties have always read this arbitration clause to mean that any disputes regarding the parties' relationships and crop transactions were going to be arbitrated. Some of the claims brought in JES Farms' initial arbitration demand are crop transactions under an addendum, and what's referred to as the MPP addendum. So that brings me to another point. Even if we read this clause the way the district court did or the way JES Farms has proposed, where it's just the second clause, we would still be in arbitration. Because that clause specifies that any disputes relating to crop transactions are arbitrable. And here, the dispute is regarding the pricing terms, the pricing addenda, that govern the crop transactions that are at issue. And as this court and other courts have found numerous times, relating to is also some of the broadest language you could use. And it just needs to touch on crop transactions to be arbitrable. And here, I think we meet that either under what I think is the correct reading by reading the clause as a whole, or even just focusing on that second sentence of the clause. So going back to what you said about the second sentence, what was your hypothetical scenario where there would be a dispute relating to a crop transaction that is not a dispute regarding the agreement, any addendum, or a transaction under the agreement? And so we're dealing with hypotheticals here, Your Honor. No, that's why I asked what was your hypothetical. You said there was a scenario in which I thought you were trying to say, well, I'm not sure whether you really meant it, or if you had one in mind. Yes, so under the NGFA Grain Trade Rule 23, it governs situations that deal with overfilled grain. Like you've ordered something and too much was provided. So it's not specified under the original contract. But, of course, you still expect to be paid for the amount that was actually delivered. And that rule deals with how that would be done. And that might not be regarding the agreement or a transaction under the agreement? Potentially. I'm sure if that was actually litigated, people would have arguments on both sides. But again, you're trying, when you're crafting this language, you want to try and when you want it to be broad, you're crafting it to be as broad as possible. So adding that sort of belt and suspenders, making it clear, even if for some reason it doesn't fall under a contract, we still expect to be in NGFA arbitration. What was that? Paragraph 23 of what? It's Grain Trade Rule 23. Grain Trade Rule 23. Okay, thank you. And that is also referenced in our briefing. Another potential reason there would be that except for language that I want to be sure to address is this, as I mentioned, the Marketplace Seller Agreement is basically a master agreement that can have addenda and other contracts that incorporate those terms. And so it would also be possible for an addenda to create an exception. We don't have one here, but it is possible.  And as I said at the beginning, we have not just one, but two arbitration clauses. So in addition to the first one, which Indigo contends is very broad, after Just Farms initiated arbitration, it agreed to the arbitration services contract, which specifically incorporates and requires the parties to abide by the NGFA rules. Now, NGFA Arbitration Rule 2 requires that in addition to the original claims brought, the parties must also agree to include in the arbitration any cross-complaint, counterclaims, or offsets set forth by the defendant that are directly related to the claims in the original complaint. Here, it is already decided and uncontested that Indigo's counterclaims that it brought in the NGFA in response to Just Farms claims are properly before the NGFA pursuant to this arbitration services contract. And that's important for a key reason. Now, I'm going to take a step back and just kind of outline the claims that are at issue so that you can understand why this is so important. Just Farms brought claims seeking payment for specific transactions under the Marketplace Seller Agreement and the MPP addenda that are at issue. Indigo asserted defenses to those that Just Farms was not owed money under the terms of the addenda, the MPP addenda, among other things. And then also asserted counterclaims that Just Farms owes Indigo payment for defaulting on contracts, including the MPP addenda. So what Just Farms is raising here, the legality of the MPP addenda, that's completely intertwined with the claims that have already been determined to be properly before the NGFA. The problem with that, this is where I have a problem, is there's a couple of key terms in the language of that, which is it has to be directly related to, I think it says, the original complaint. And so here you have a situation in which this is a defense, I think, to one of Indigo's counterclaims. And just by its plain language, this language does not incorporate defenses that come in as to counterclaims. It only covers the counterclaims, the cross complaints, or the offsets. I don't agree with that. I think you can't bring a counterclaim, but then the party can't, you can't respond to the defenses. I don't think you can split claims and defenses that way. But in addition, it is in response to the original claims. Just Farms is saying, we're owed money. Indigo says, no, you're not. Here's why. And some of those arguments are based on the language that Just Farms agreed to in the MPP addenda. So your argument is not really that it's covered by the plain language, just that if you can bring counterclaims, then any defenses to that claim have to be arbitrable as well. I don't think it works otherwise. But in addition to that, it's also part of the original claims. Because the response to our defense, to the original claims, is no, these contracts apply. And so they have to argue, you know, whether or not they actually did so is irrelevant. If they want to respond to our defenses, they'd have to say, well, the contract's illegal. Well, now it's also part of the original claim. So it's completely intertwined and not, it can't be severed out from the agreement to arbitrate not only its original claims, but also the counterclaims. So I will reserve my remaining time unless there are further questions at this time. Thank you for your argument. Mr. Redd, we'll hear from you. Thank you. Ryan Redd, on behalf of the plaintiff, Jess Farms Partnership, also the appellee. May it please the Court, counsel. I want to begin by addressing the policy that favors arbitration that was referenced in the party's briefs. I think that's important as it relates to how these arbitration clauses are interpreted and how this Court reviews them. Enough significance is this federal policy favoring arbitration. It comes up all the time. It came up in this case. It's come up in other cases. But the Supreme Court in Morgan v. Sundance held that that's more of a misnomer. There's no policy that favors arbitration. In reality, the policy is that arbitration agreements should be as forcible as other contracts, but not more so. A court must hold a party to its arbitration contract just as the court would hold any other contract. The court may not devise novel rules to favor arbitration over litigation. And the federal policy is about treating arbitration contracts just like other contracts. It's not about fostering arbitration. And I think that holding provides clarity because it reaffirms the fundamental concept here, which is arbitration is a matter of contract. And the guiding principle in reviewing an arbitration provision is to give effect to the contractual rights of the parties, intend that the parties control, and it's the duty of the court to enforce and uphold the parties' intentions. To that extent, the parties are entitled to draft arbitration clauses however they want. They can make them broad. They can make them narrow. They can limit the issues. They can expand it to cover every single issue if they want. But it's up to the parties and it's their intention. But ultimately, a party cannot be forced to arbitrate an issue that it did not agree to arbitrate. And even if that means the case gets split or bifurcated, some aspect goes to arbitration, some goes to get decided by the district court. That's what the parties intended and that's what the court should enforce. And in this case, we've got this arbitration clause that counsel mentioned before that starts out relatively broad. But as the court acknowledged, the second sentence of the arbitration clause, as the district court ruled, narrows what is actually being submitted to arbitration, defines what the dispute that should be arbitrated, crane transactions, is a limited issue, a limited scope. Yeah, but it also uses the word relating. It says relating to crop transactions arising under the agreement. And if you're arguing about the illegality of the marketplace and the way this is set up, how is that not related to crop transactions? Two reasons here. One, as Judge Pearsall noted, the legality issue exists regardless of whether the contract is performed. It could deliver grain, buy grain, sell grain. The legality issue still exists. So just because there's a transaction that takes place doesn't mean that the legality issue somehow gets wrapped up into it. Part two of it has to do with the NGFA arbitration itself, which its purpose is to resolve grain disputes, grain transactions. It's not a legal body. It's not the members or members of the ag community. They're not law trained. As mentioned in our brief, the NGFA doesn't have substantive laws. It's kind of like the UCC for grain. There's gap fillers for these simple, you know, crane transactions. Well, I'm more on your first argument, and I want to give you a chance to finish, the relating to, I think the district court may have kind of ignored that broad phrase, which is whether or not it exists in the absence or whether the dispute would exist in the is not the question when you have broad language like relating to. Relating to just means it needs to be related to, right? And it's just hard to fathom how this can't be related to crop transactions because the entire purpose of the marketplace is to facilitate crop transactions. I don't know if there is another purpose to it. You can tell me if there is. No, I agree. The purpose is to facilitate the crop transactions. That's the marketplace was a place for Jess Farms and other producers to go so they could buy grain or sell their grain to other producers. The problem that comes up is how they evolved into this. Essentially, it's an off-market exchange. The buy and sell puts and options, and it's not regulated, and that's why those types of exchanges aren't legal. So the relating to has to do with relating to crop transactions arising under the agreement. So the crop transaction itself, that would be subject to arbitration. But I think what you're saying is I think you're replacing related to with about. So about crop transactions. That doesn't have the broad language of relating to. So I would agree with you if it used something like about. Sure. Or but here or even arising out of maybe would get you there. Sure. But relating to seems to me to carry a different connotation. Right. Which that's the arising under the agreement version. The last portion of that phrase, I think, helps again kind of define that scope to these crop transactions relating to the agreement or arising from the agreement. The agreement itself isn't going to arbitration. The validity of that agreement is going to arbitration. That's what the district court's role is here because the parties didn't intend for that to happen. And so I guess then, GFA, the fact that this clause in and of itself, I mean, it's drafted by Indigo. It's a foreign document. They could have worded it differently if they wanted it worded differently. The parties intended that every claim would be arbitrated. It would say that. It doesn't. And as Judge Pearsall noted in his opinion, this provision is not like the one in Buckeye of significance. The Buckeye arbitration clause was as broad as it can be. Any claim, dispute, or controversy arising from or related to the agreement or the validity, enforceability, or scope of the arbitration provision or the entire agreement will be decided by the arbitrator. So not only did Buckeye delegate who decides the issue of arbitrability to the arbitrator, specifically said the validity of the contract will be decided by the arbitrator. So scope wasn't really an issue in that case because it was as broad as can be. The other cases cited by Judge Pearsall where he reviewed Parham v. Bluestem, again, as broad as can be. Any claim, any dispute, any controversy. Included in the Bluestem arbitration provision was the definition of dispute, which they defined to be, shall be construed as broadly as possible. Again, it's a clarification that it's as broad as possible. Unlike ours, where dispute is just crop transactions. Let me ask you this, though. We've been focusing just really on the second sentence. How do you reconcile the first sentence with the second sentence? Because you talked about this being a narrow one, but of course the first sentence, if you read it the way they want to, the opposing counsel, it is really broad. Right. Well, the first sentence, it kind of starts wide and then comes narrow. That's how, I guess, they draft it. I believe the first sentence does start out broader. It gives an idea of what rules are going to apply. Any dispute will be referred to NGFA arbitration. If it ended there, maybe this is a different story, but it doesn't. The parties indigo, in this case, decided it was going to include the additional language to provide that additional clarity and scope to say what we actually mean in this first sentence is these crop transactions arising under these agreements are going to NGFA arbitration. It's similar to, I believe it was the Hansen case, and we also cited the Dover Princess cruise lines where the court says, if you wanted it broad, you should have left it broad. You included language limiting it. That was your choice. That shows the party's intention, so we're going to enforce your intention to keep it in that limited scope. Any other ruling would enforce or require the parties to arbitrate a claim that they didn't intend to arbitrate. Again, the opinion of Buckeye was in 2006. These contracts relate to 2020, 2021. They wanted a provision that they could copy and look at. It was right there. It could have been done, but they didn't. I'll note also this hypothetical that was addressed. I think, as you noted, Judge, the hypothetical would cover, I think they said, grain that was over more than what was contracted. You take out the second sentence, that hypothetical still would fall under the first sentence. To read the second sentence to mean something other than narrowing the intent would leave that sentence superfluous because it doesn't add anything to the scope or add anything at all with respect to the intent of the parties. Well, I thought she was saying that that hypothetical wouldn't be regarding the agreement or a transaction under the agreement, you're saying. I don't know how it wouldn't be. We delivered grain. There's no bridge on a transaction. It's still regarding the transaction. Right. Yes, Your Honor. So that's why, again, if they wanted it to be everything, the second sentence wouldn't be there. There's no way you can interpret, give the second sentence any actual meaning other than to construe it as defining and limiting the scope of the first sentence. As for the other contract, the arbitration services contract, Judge Pearsall noted the arbitration rule 2A, as you pointed out, Judge, limits the scope of arbitration to issues directly related to the complaint. Here, Jess Farms delivered grain. I didn't get paid. Once went by. I never got paid. Once went by. I didn't get paid. So they want to get paid for grain. It's pretty straightforward. They filed an NGFA action to get paid. What they got in return was a claim for millions and millions and millions of dollars and counter claims about all this other stuff that, again, it's not before the court. It's not what the party's intended to arbitrate. But Judge Pearsall correctly noted that there's nothing in the Sheehan's complaint, the NGFA, that implicates or affects the legality of these MPP contracts. It's not mentioned at all. There's nothing cited to say that it was mentioned. Ultimately, it was a very narrow issue about specific delivery of grain that Indigo has tried to take the opportunity to explode, to be much bigger, much more, expand beyond what the party's intended. Ultimately, I know I've got some time, but I'll let it go. At the end of the day, these broad clauses that are addressed have a common theme. They delegate the issue of arbitrability to the arbitrator, and they have very broad, any and all claims. They specifically state the arbitrator can decide the issue of validity. Here, we don't have that. We don't have any of that. Nothing in this provision delegates the authority to determine arbitrability to the arbitrator. That's an issue reserved for the court. Nothing in this provision provides that the arbitrator can decide the validity of the contract. Nothing in this provision encompasses Jess Farms' legality claim under the Commodity Exchange Act. The parties do not intend for that issue to be submitted to arbitration, especially in a forum that doesn't provide them an opportunity to fully develop their claim, conduct discovery, so they can have a fair chance at actually having it adjudicated. Jess Farms can't be forced to arbitrate a claim that it did not intend to arbitrate. Judge Pearsall correctly found that the legality claim was not included in the arbitration provision, and the parties do not intend to submit it to arbitration. Therefore, Jess Farms Partnership respectfully requests that this court affirm Judge Pearsall's decision. Thank you for your argument. We'll hear a rebuttal, Ms. Chwapski. I just want to address a couple of points. Opposing counsel references longer arbitration provision language in cases like Buckeye and says we should have done more to make it clear that it's broad. But then when we did add an additional clause to make sure it's really clear that anything relating to crop transactions is also included, now we've done too much and we've swallowed the whole clause and it only applies to crop transactions. So I don't think you can have it both ways. Having a broad clause that includes multiple examples doesn't somehow negate the original broad proposition in the arbitration clause. Second, opposing counsel made much of the fact that its claims started as small, but it neglects to inform the court that its own claims grew throughout the two-year arbitration and the dollar amounts are much closer than they were originally. And it's Indigo's position that Just Farms did raise the issues of legality, maybe without using that particular word, but in any event, it could have. And if it failed to do so, then that's the result of its own making and not something that permits it to somehow make that claim somewhere else when it is properly arbitrable. I would also like to note that the hearing was imminent after two years of arbitration. Just Farms didn't raise this issue until right before the hearing, with the court entering a TRO days before it was supposed to commence. And lastly, just to cover the remedies that we're seeking, Indigo requests that this court reverse the district court's order denying in part the motion to compel and to hold that Just Farms' claims are arbitrable. We request that this court compel arbitration. And because that would resolve the entire dispute in court, that the case be dismissed or in the very least stayed. Thank you. Why would we order the case dismissed? Wouldn't that be up to the district court once, if arbitration were compelled? I think it would be appropriate given there is nothing left in the case once everything's in arbitration, but you could certainly send it back to the district court for a stay, for a determination of whether to stay or dismiss. What happened with the arbitration proceeding in the meantime? It's on pause. It was not able to go forward. Could I ask one follow-up question? Just Smith v. Sperese, the Supreme Court case, I think that's maybe why you said the dismissal versus the stay. What's the effect here, if any, of what the court may or may not decide in that case? I'm sorry, I'm not familiar with that case, but I'm happy to submit something further if that would be helpful. Thank you. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.